IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WENDY J. CROWLEY,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 12-1524 |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2015, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 17) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 24) be, and the same hereby is, denied. The Commissioner's decision of February 7, 2011, will be vacated and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to 42 U.S.C. §405(g).

A reviewing court is bound to the Commissioner's findings of fact if they are supported by substantial evidence even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by the substantial evidence standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her pending applications for disability insurance benefits and supplemental security income on April 13, 2009, alleging a disability onset date of February 28, 2008, due to knee, back and hand impairments, restless leg syndrome, high blood pressure and arthritis. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on January 14, 2011, at which plaintiff, represented by counsel, appeared and testified. On February 7, 2011, the ALJ issued a decision finding that plaintiff is not disabled. On July 26, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.[1]

Plaintiff was 46 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She completed the eighth grade, which is classified as a limited education. 20 C.F.R. §§404.1564(b)(3) and

---

[1] Plaintiff filed the pending civil action on October 22, 2012. Defendant filed a motion to dismiss the complaint as untimely. Plaintiff responded by indicating that on September 21, 2012, prior to the expiration of the 60-day period for filing a civil action, she had requested that the Appeals Council grant an extension of time until October 22, 2012, to file her complaint, but that the Appeals Council never ruled on her request. By order dated October 29, 2014, the Honorable David S. Cercone denied the motion to dismiss. After the filing of the transcript, the case subsequently was reassigned to this member of the court.

416.964(b)(3). She has past relevant work experience as a dietary aide, but she has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of bilateral knee degenerative joint disease, restless leg syndrome, a back impairment and obesity, those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level but with the following limitations: "she must have a sit/stand option; she would be limited to occupations that require no more than occasional pushing and pulling with the lower extremities, and that includes the operation of foot pedals." (R.31). Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including assembler, packer and checker. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his

previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ erred at step 2 by failing to address plaintiff's respiratory condition; (2); the ALJ erred in evaluating plaintiff's obesity; and, (3) the ALJ erred at step 3 by failing to consult a medical expert in determining whether any of plaintiff's impairments were medically equivalent to any listed impairment. Upon review, the court is satisfied that the ALJ did not err in *not* finding that plaintiff has a severe respiratory impairment and that the ALJ adequately evaluated plaintiff's obesity. However, because there was no judgment of a physician on the issue of medical equivalence received into the record as opinion evidence as required by SSR 96-6p, this case must be remanded to the Commissioner.

Plaintiff's first argument is that the ALJ erred at step 2 in not addressing plaintiff's "respiratory condition" nor finding it to be a severe impairment. In support, plaintiff refers to medical records that show she was admitted to the hospital in 2008 for severe "hypoxemia,

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

bronchospasms and wheezing" stemming from a bout with sinusitis and bronchitis; another episode of acute sinusitis from February 2009 to May 2009; and, an episode of sinus drainage and pharyngitis in August 2010 that developed into acute asthmatic bronchitis in October 2010.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe medically determinable physical ... impairment that meets the duration requirement ...." 20 C.F.R. §§404.1520(a)(4)(ii) and 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1520(c) and 416.920(c). The duration requirement mandates that the severe impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1509 and 416.909.

The step two inquiry is a *de minimus* screening device and, if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. The claimant bears the burden at step 2 of establishing that an impairment is severe. See, McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3rd Cir. 2004).

Here, plaintiff alleges that the ALJ erred in not finding her to have a severe respiratory impairment. Although not exacting, it nevertheless was plaintiff's burden to show that she had a medically determinable respiratory impairment that would result in more than a *de minimus* effect on her ability to perform basic work functions for a period exceeding twelve months. She did not meet that burden.

Initially, plaintiff failed to show that she has a medically determinable respiratory impairment that meets the duration requirement of the Act. Although the record indicates that

she suffered from occasional bouts of acute sinusitis and bronchitis during the relevant time period, there is no evidence in the record that she ever has been diagnosed with any sort of *chronic* respiratory impairment such as, *e.g.*, chronic obstructive pulmonary disease, asthma or chronic asthmatic bronchitis, that could be expected to last for a continuous period of at least 12 months.

Nor is there evidence to support a finding that plaintiff's respiratory "condition" results in more than a *de minimus* effect on her ability to perform basic work functions. Although plaintiff testified that she "wheeze[s]" when going up and down stairs and that she uses a prescribed inhaler "daily," there is no evidence indicating that her wheezing and use of an inhaler would effect her ability to perform basic work functions. Accordingly, the court finds no error in the ALJ's failure to find at step 2 that plaintiff has a severe respiratory impairment.

Plaintiff's second argument is that the ALJ erred in evaluating plaintiff's obesity, which she found at step 2 to be a severe impairment. Specifically, she alleges that the ALJ failed to comply with SSR 02-1p. Upon review the court is satisfied that the ALJ complied with SSR 02-1p and that her evaluation of obesity is supported by substantial evidence.

SSR 02-1p recognizes that obesity is a medically determinable impairment and that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Accordingly, the ruling instructs the ALJ "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p; *see also* Appendix 1, §§1.00(Q) and 3.00(I).

In this case, the ALJ found obesity to be a severe impairment and addressed it in her step 3 analysis, noting plaintiff's height, weight and body mass index (BMI). (R. 31). She also

AO 72
(Rev. 8/82)

explicitly acknowledged SSR 02-1p and recognized that it requires the effects of obesity to be considered in evaluating disability. (Id.) Accordingly, the ALJ stated that she "considered [plaintiff's] weight in reaching this decision." (Id.)

In essence, plaintiff's contention is that, although the ALJ acknowledged the applicability of SSR 02-1p and its mandate to consider the effects of obesity in evaluating disability and indicated that she did consider plaintiff's weight in reaching her decision, the ALJ nevertheless was required to consider obesity more explicitly, particularly at step 5 in assessing plaintiff's residual functional capacity.

However, plaintiff does not specify in what way obesity would affect her residual functional capacity beyond the limitations the ALJ found and points to no evidence in the record supporting any additional functional limitations. Moreover, the ALJ relied on the medical evidence from plaintiff's treating physicians as the basis for her residual functional capacity, and none of those sources suggested any further limitations in plaintiff's ability to work based on her weight, although they obviously were aware of her obesity. *See* Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005)(ALJ's reliance on medical evidence from sources who were aware of claimant's obesity but did not mention obesity as contributing to any limitations was "satisfactory, if indirect" consideration of evidence even where ALJ did not even mention obesity in decision).

Whereas the ALJ in Rutherford failed to mention obesity at all, the ALJ in this case expressly found it to be a severe impairment, addressed it at step 3, acknowledged the applicability of SSR 02-1p and indicated that she considered plaintiff's weight in her decision.

Accordingly, the court is satisfied that the ALJ adequately addressed, both directly and indirectly, obesity and its effects, alone and in combination with plaintiff's other impairments, at each step of the sequential evaluation process.

. Plaintiff's final argument is that the ALJ erred at step 3 by failing to consult with a medical expert in determining whether plaintiff's impairments, alone or in combination, meet or medically equal any of the listed impairments. Because plaintiff is correct that the record is devoid of any opinion of a physician designated by the Commissioner on the issue of medical equivalence, this case must be remanded for further proceedings.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the impairments listed in appendix 1 of the Regulations. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is *per se* disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

Under the regulations, an impairment is "medically equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§404.1526(a) and 416.926(a). If a claimant has an impairment described in the listings but does not exhibit one or more of the findings specified in that particular listing, or if a claimant exhibits all of the findings specified in the particular listing, but one or more of the findings is not as severe as specified in the listing, the claimant's impairment will be found to be medically equivalent to the listing "if [the claimant] has other findings related to [the]

impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §§404.1526(b)(1) and 416.926(b)(1). Medical equivalence also can be found for a combination of impairments, no one of which meets a listing, if the findings related to the claimant's impairments are at least of equal medical significance to those of a listed impairment. 20 C.F.R. §§404.1526(b)(3) and 416.926(b)(3).

Medical equivalence is to be determined by considering "all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding." 20 C.F.R. §§404.1526(c) and 416.926(c). Significantly, the regulations explicitly provide that the ALJ is to consider the opinion on equivalence given by medical consultants designated by the Commissioner. Id. However, the ultimate responsibility for deciding medical equivalence rests with the ALJ. 20 C.F.R. §§404.1526(e) and 416.926(e).

Here, the ALJ found that plaintiff "does not have an impairment, or combination of impairments, that meets *or medically equals* any of the listed impairments." (R. 30) (emphasis added). In reaching this conclusion, the ALJ noted that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. 31). In fact, however, as plaintiff aptly notes, the record is devoid of any evidence that any acceptable medical source ever considered whether any of plaintiff's impairments, alone or in combination, medically equal any of the listed impairments.

SSR 96-6p explicitly instructs that "longstanding policy requires that the judgment of a physician ... designated by the Commissioner on the issue of equivalence before the [ALJ] ... must be received into the record as opinion expert opinion evidence and given appropriate weight." (emphasis added) The Ruling further notes that "[w]hen an [ALJ] finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to

receive expert opinion evidence into the record may be satisfied by [a Disability Determination and Transmittal Form] signed by a State agency medical ... consultant." (emphasis added). The "signature of a State agency medical ... consultant on [a Disability Determination and Transmittal Form] ... ensures that consideration by a physician ... designated by the Commissioner has been given to the question of medical equivalence at the initial ... level[] of administrative review."

Accordingly, to ensure that the state agency properly considers medical equivalence in the first instance, it must submit documentation establishing that it has done so. Pintal v. Commissioner of Social Security, 602 Fed. Appx. 84, 87 (3d Cir. 2015). "The form serves as a proxy to show that the state agency consultant has considered the question of medical equivalence." Id. The ALJ is then required to consider the opinion of the state agency medical consultant as an expert medical opinion. Id.; 20 C.F.R. §§404.1526(c) and 416.926(c).

In this case the record does contain a Disability Determination and Transmittal Form (R. 75).[3] However, that Form is not signed by a State agency medical consultant designated by the Commissioner.[4] Instead, it merely bears the typewritten name of "David Bailey," the disability examiner, and the box for the signature of the physician is blank. (Id.) The record also contains an "analysis of vocational factors" form that bears the electronic signature of "adjudicator" David Bailey, (R. 74), as well as a physical residual functional capacity assessment, also electronically signed by "adjudicator" Bailey. (R. 77-82).

---

[3] The record also contains a second Disability Determination and Transmittal Form (R. 76) which appears to be identical to the one filed at R. 75.

[4] A "medical ... consultant designated by the Commissioner includes any medical ... consultant employed or engaged to make medical judgments." 20 C.F.R. §§404.1526(d) and 416.926(d). A medical consultant must be an "acceptable medical source" as defined in 20 C.F.R. §§404.1513(a)(1) or (a)(3)-(5) & 416.913(a)(1) or (a)(3)-(5) to include licensed physicians, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.

What the record does not contain, however, is any documentation whatsoever, such as a Disability Determination Explanation, which so much as even suggests that the issue of medical equivalence had been considered by an acceptable medical source. Thus, since the Disability Determination and Transmittal Form was not signed by a state agency medical consultant, there is no assurance that any physician ever gave any consideration to the question of medical equivalence at the initial administrative level.

Because the Disability Determination and Transmittal Form in this case was not signed by a state agency medical consultant, it was insufficient to satisfy the requirement set forth in SSR 96-6p that the ALJ must receive the judgment of a physician designated by the Commissioner on the issue of medical equivalence. *Cf.*, Terrell v. Colvin, 2014 WL 3401671 (W.D. Pa., July 10, 2014(J. Hornak)(signature of state agency *physician* sufficient to satisfy requirement of expert opinion evidence on issue of equivalence). As a result, it was incumbent upon the ALJ to secure a medical expert opinion on that issue and give it appropriate weight under SSR 96-6p.[5] She did not do so in this case. As a result, this case must be remanded to the Commissioner for consideration of the issue of whether any of plaintiff's impairments, alone or in combination, are medically equivalent to any listed impairment.

---

[5] While the Commissioner is correct that an ALJ generally has discretion in deciding whether to obtain an *updated* medical opinion from a medical expert, that does not relieve her of the *initial* obligation to receive the "judgment of a physician designated by the Commissioner on the issue of medical equivalence into the record as expert opinion evidence" as required under SSR 96-6p. Had the Disability Determination and Transmittal Form been signed by a physician in this case, the ALJ's obligation would have been met, and she then would have had the discretion, with the two enumerated exceptions set forth in SSR 96-6p, to determine whether additional medical expert testimony was necessary. *See, e.g.*, Hardee v. Commissioner of Social Security, 188 Fed. Appx. 127 (3d Cir. 2006)(absent the enumerated circumstances set forth in SSR 96-6p, ALJ has broad discretion in determining whether to consult medical expert and obtain an *updated* medical opinion on equivalence); SSR 96-6p; 20 C.F.R. §§404.1527(e) and 416.927(e). The determination and transmittal form was not signed, however, and therefore the record was devoid of *any* expert opinion from a physician on medical equivalence.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Joy A. Johnston, Esq.
Johnston Law Offices
P.O. Box 248
Sharpsville, PA 16150

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219